R. C. Johns v. J. F. Weeks, as Constable, Fourth Justice of the Peace District, Duval County.

191 So. 187

Opinion Filed September 27, 1939

H. O. Pemberton, for Petitioner;

George Couper Gibbs, Attorney General, and Tyrus A. Norwood, Assistant Attorney General, for Respondent.

Terrell, C. J.—Petitioner was arrested for doing business without the license required by Section 5 of Chapter 18011, Acts of 1937, the nature of his business being that of trading, buying, bartering, and selling tangible personal property, to-wit: farm products, a part of which he purchased from other persons on the premises of the Jacksonville Produce Market in the City of Jacksonville. Writ of habeas corpus was issued from this Court.

The question presented is whether or not a person dealing

in farm products through a wholesale farmers' produce market is subject to the license tax imposed by Section 5 of Chapter 18011, Acts of 1937, the pertinent part of which is as follows:

"Section 5. Every person engaged in the business of trading, buying, bartering, serving, or selling tangible personal property as owner, agent, broker, or otherwise, shall pay a license tax of $25.00 (which shall entitle him to maintain one place of business, stationary or movable) and shall pay $25.00 for each additional place of business, provided that the said twenty-five dollar license tax shall not be required for any place of business licensed under the provisions of Chapter 16848, Laws of Florida, Acts of 1935. Wholesalers and others who do not pay a license tax calculated wholly or in part on gross receipts from their sales and who keep a stock of merchandise for sale shall pay an additional tax of $1.50 for each thousand dollars of their stock of merchandise, (other than petroleum products)."

The wholesale farmers' produce market is an institution centrally located where the farmers take their produce to sell and where buyers go to purchase from them. In some instances, they are local enterprises while the State has recently engaged in the business of aiding to provide them. They are equipped with booths, lights, water, sewerage, and other sanitary facilities, are policed, are of recent origin and were not known to the law when Chapter 18011 was enacted. They are patronized by hundreds of farmers and a casual examination of the Act discloses that it had no such institution in contemplation when the license tax was imposed.

"Tangible personal property" and "place of business" as employed in the Act quoted here have no reference to the sale of farm products from a booth in or about a wholesale farmers' produce market but apply to the sale of all classes

of personal property sold from established or portable places of business, such as stores, garages, commissaries, filling stations, and other places.

A casual reading of that part of the Act quoted may not conclude this view but a study of the entire Act, including its background, leaves no doubt of the correctness of this conclusion. Section 25 is as follows:

"Section 25. All farm and grove products and products manufactured therefrom, except intoxicating liquors, wine or beer, shall be exempt from all forms of license tax, State county, and municipal when the same is being offered for sale or sold by the farmer or grower producing the said products."

In the face of a provision of this kind, exempting farm and grove products from all forms of license taxes when sold by the grower, said provision being a part of the license Act, it would be unheard of to contend that the tax could be legally imposed on the producer when selling his products at a wholesale farmers' produce market. It, in other words, lifted all farm and grove products out of the classification of "tangible personal property."

Another element supporting this conclusion is the size of the license tax. A tax of twenty-five dollars on each booth or place of business with municipal taxes and other charges added would be prohibitive and if every farmer who patronized the wholesale farmers' produce market was required to pay this amount, it would place the facilities of the market out of his reach. This Court takes knowledge of a consistent policy on the part of the Legislature for years to exempt the producers of farm and grove products from all forms of license tax to dispose of what he produces. The wholesale farmers' produce market is a convenience to help him in this. It is not a place where speculative retail-

ing in farm and grove produce is carried on. Sales are limited to those made by the producer or his agent. It is, in other words, a clearing house for farm and grove products.

The writ should be quashed and the petitioner discharged.

It is so ordered.

WHITFIELD, P. J., BROWN, BUFORD and CHAPMAN, J. J., concur.

Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.